## SUFFICIENT GROUNDS FOR RECISSION OF CONTRACT FOR SALE OF REAL ESTATE.

Circuit Court of Cuyahoga County.

O. W. JOHNSON AND SUSIE JOHNSON v. H. A. TILDEN ET AL.

Decided, May 10, 1912.

*Fraud—Rescission. of Contract—In Doubtful Case Reviewing Court Will Follow Trial Court as to Weight. of Evidence—False. Representations as to Rental Value Ground for Rescission of Contract.*

1. In a contract for the sale of real estate, false representations as to the rental value of the property and as to the existence of a sewer connection in a house, constitute fraud for which a rescission of contract will be granted.
2. In an action in equity for the rescission of a contract, heard upon a transcript of the evidence in the court below where there is some uncertainty as to the weight of the evidence, an appellate court will accept the conclusions of the trial court which saw the witnesses face to face, and had better opportunity to judge of their credibility.

*H. J. Doolittle,* for plaintiffs in error.
*F. C. Scott,* contra.

DUSTIN, J. (sitting in place of Winch, J.); POLLOCK, J. (sitting in place of Marvin, J.), and NIMAN, J., concur.

This case is here on appeal. It was brought in the common pleas court for a rescission of a certain contract for the exchange of real estate on the ground of deception and fraud. There was a denial of misrepresentation, denying the knowledge of certain facts, and an assertion that Johnson had warning and an opportunity to examine, knew all of the facts and that he later was satisfied. On the hearing in the common pleas court, the court granted the prayer of the petition and gave a decree for a rescission of the contract in quite lengthy terms. The case is here upon the transcript of the evidence below and upon some new and additional testimony.

Now, the story of the case is about as follows:

Johnson had a farm of 117 acres in his wife's name, which

he desired to exchange; Tilden had a lot of city property which he was willing to exchange. The two got together through agents, the agent of Tilden being one Hepner. Johnson came to town and looked over the properties, being conducted about by Hepner. He claims that Hepner made misrepresentations as to certain houses on Ninety-First street in two respects; one is as to the rentable value, or rather what the actual rental was, claiming that it was $25 per house for the two houses, whereas the truth of the matter was that the rental was only $18; also that the cellar was adequately drained by a sewer in the street, whereas it wasn't drained at all by the sewer, but the laundry tubs in the cellar drained into a cesspool in the rear, and the cesspool would fill and overflow back into the cellar, and the house was uninhabitable part of the time on account of standing water in the cellar to the extent of several inches in depth; there was no connection of the cellar with the sewer. Also claimed that there was misrepresentation as to the rentable value of other properties on Ninety-Ninth and One Hundred and Twelfth streets. Some of these properties were new and not yet rented, but the claim is that he represented that certain parties were anxious to take them at certain prices, all of which was false and he knew the same to be false. Also that as to the properties on Ninety-Ninth street, there was a misrepresentation as to the gas connection. Gas pipe was there in the house, a new house, and the representation was, according to Johnson, that they would furnish the fixtures according to the choice of the purchaser; that there was connection there, but it turned out that there was no connection at all; there was no gas on the street. Also that there was general misrepresentation as to the value of these properties, Johnson not being acquainted with city values, and the representation was so extravagant that it makes it a case of gross failure of consideration.

Now, as to the matter of rental value of the Ninety-First street houses, it appears that the agent took Johnson to one of the tenants to advise with her, to confirm his story and she reported that the rental was $25 a side, but it afterward appeared in examination of this witness that shortly before the collector of rent had appeared and told her that hereafter the rent would

be $25, and it was claimed that was a part of the scheme to deceive Johnson. As to the other tenant of the Ninety-First street houses, she was absent at the time and no information could be obtained from her.

Later, the parties all met in a law office to talk matters over and to make out deeds and exchange papers. Meantime Johnson had had a tip from one of the tenants as to water standing in the cellar and a statement made that there was no connection with the sewer, whereupon Tilden, being present at this conference, brought up one Brister or Brisker who had owned the property, to state that there was a sewer there that he had constructed, and that the engineer's office of the city would show a sewer in that street. That seemed to calm the fears of Johnson, and there was also an explanation as to the rental. He had a tip that it was only $18, and the explanation was that if that was the case, and only $18 has been paid for the current month, and that there was some yet due, and in the adjustment of taxes and interest upon mortgages (for all of these properties were encumbered, including the farm, and there had been an adjustment of taxes and interest), there was an allowance of one-half the rental received for that month, which was $18.

The papers were exchanged and some of the properties being new and liable to mechanics' liens, the deed for Johnson's farm was placed in escrow, not to be delivered until the time had expired within which mechanics' liens could be taken. This was in November. At the same time there was found to be due Johnson about $203 which they settled for $200 on the adjustment of interest and taxes and this rent, and a check was given Johnson for $200, post dated thirty days. Johnson did not discover the post date on the check and deposited it at once with his bank, but it was ultimately returned, as there was nothing due, and one of the claims in the petition is that there is $200 due on that, and that was considered as evidence of fraud, and it appears that there was no money to meet that check, nor was it ever paid, but the claim of defendant is that there was a tender made of the amount of that check, and they acknowledge the amount due in the answer and express a willingness to pay it.

It is claimed on the part of the defendants that Johnson was not a farmer but a business man, to some extent acquainted with values; he was anxious for the trade and thought that he was getting the better of the bargain; that he expressed himself afterward as satisfied, and apologized to some extent for some remark he had made concerning their efforts to misrepresent, but it also appears that his apology was made within a few days and before he had come into a full realization of the situation, and that he did not find out about the sewer and all the facts in the case until later. As against that, there is some evidence tending to show that Tilden, in talking over the matter of the cellar with Johnson, said: "This property should be raised." That Tilden said, referring to this house, "I had bids upon it, and it would cost about $400 to raise it, and that if he had kept the property he would have raised the house." And he (Johnson) seemed satisfied at the time.

Also claimed that this representation as to the rental value of these other properties, new, was a near estimate of what they might bring, and they should not be chargeable with any deception there.

The testimony is quite lengthy, and as to the principal points in dispute is contradictory, especially as to what occurred in the office in the presence of Johnson and Tilden. But upon looking it all over, all the facts and circumstances, all testimony in the case, we have arrived at the same conclusion as the court below. The case is made out by a preponderance of the evidence. It is not a very strong case, but we are inclined to give to the court below the benefit of any doubts we might have as we would to the verdict of a jury, because the situation was before that court; he could see and hear the witnesses and he has issued a decree for a rescission of the contract.

I should mention, perhaps, the claim that it is too late for rescission. We do not think so. The farm property is still intact, the personal property which was in the contract for exchange was not disposed of, and was so prevented by injunction, and as to the mortgages, they may be paid, according to interest due upon them and taxes.

Of course, since the decree below, there have been rents collected by Johnson, of which we have no evidence as to the amount, and there is rent, of course, on the farm. We haven't the facts before us to make an exact decree, because we do not know what was collected by Johnson, nor have we any evidence as to the reasonable rent of the farm. There is something yet to be done by the attorneys here. They ought to be able, without much trouble, to make an adjustment of these matters. We will issue a decree for rescission, and a re-transfer of the real estate and personalty, and as to the adjustment of these differences of the taxes and rentals and interest, if the parties can not agree, we will refer the same to a master.

There is some language in the decree below to which we do not quite agree. It is stated in two places that the house was found to be uninhabitable. We think that is putting it too strong. It was not uninhabitable except at times; it was probably unwholesome and uncomfortable, and by reason of the water in the cellar, was not rentable, but it was not uninhabitable. This phrase should be stricken out.

The court also says that the rentals received by Johnson were far less than the amount expended by him; that, therefore, he is not held accountable for the rent, but not stating what they were in either case. That should probably be made more definite.

If counsel will take a cue from what we have stated to them and get together upon this situation as it has developed since the decree of the common pleas court, we should be able to approve any agreement they make. If they are unable to agree, they can present the matter to the court for adjustment, or to a master for more accurate determination.